## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                          |   |                       |
|--------------------------|---|-----------------------|
| **JOSEPH P. INGRAM**     | * |                       |
| **Plaintiff**            | * |                       |
|                          | * |                       |
| **v.**                   | * | **Case No. BPG-09-2660** |
|                          | * |                       |
| **AUTO PALACE, INC.**    | * |                       |
| **Defendant.**           | * |                       |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM AND ORDER</u>

### I.   <u>BACKGROUND</u>

Plaintiff Joseph P. Ingram ("plaintiff") brought this action against defendant Auto Palace, Inc. ("defendant") for a declaratory judgment, permanent injunction, and damages pursuant to the following: (1) the Motor Vehicle Cost and Information Act, 49 U.S.C. § 3205 <u>et seq.</u>; (2) the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308; (3) the Uniform Commercial Code as codified in the Annotated Code of Maryland, Commercial Law Article, § 2-314 (breach of express and implied warranty), and § 2-608 (revocation of acceptance); (4) Maryland common law (fraud); and (5) the Maryland Consumer Protection Act, Md. Code Ann., Commercial Law § 13-408.

Plaintiff is a resident of Maryland.  Defendant is a New York corporation with its principal place of business in New York.  Count One of this action is in this court on original federal question jurisdiction under 28 U.S.C. § 1331 because the Motor Vehicle Cost and Information Act provides that "a [private] person may bring a civil action to enforce a claim under [the Act] in an appropriate United States district court or in another court of competent jurisdiction."  49 U.S.C. § 32710(b).  This court has supplemental jurisdiction over all other

claims in this action under 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Plaintiff filed the Complaint on October 13, 2009.[1]  (ECF No. 1.)  In his Complaint, plaintiff alleges that he purchased a 2008 Mitsubishi Lancer (the "vehicle") for $16,314.00 from defendant through the Internet on September 5, 2009.  (Id. ¶¶ 5-6.)  Defendant shipped the vehicle to plaintiff in Maryland.  (Id.)  In his Complaint, plaintiff asserts five counts against defendant relating to the sale of the vehicle.

In Count One of the Complaint, plaintiff claims that defendant violated the Motor Vehicle Cost and Information Act because "defendant failed to disclose the odometer reading on the proper title documents."  (Id. ¶ 8.)

In Count Two of the Complaint, plaintiff asserts a claim for breach of an alleged implied warranty of merchantability.  Plaintiff alleges that the vehicle was advertised as being in "excellent condition," and having a "power seat," "heated seats," a "rear spoiler," and "front floor mats," but that, when it was delivered, the vehicle had none of these features.  (Id. ¶¶ 14-15.)  Plaintiff also claims that the vehicle "had a damaged interior and cut wires hanging from the dash board," and that the vehicle's trunk contained a different VIN number than the VIN number on the dashboard.  (Id. ¶¶ 16-17.)  Plaintiff also alleges that "the vehicle's rim on the front wheel is bent," and that "the vehicle was delivered into Maryland without a catalytic

_____

[1] Plaintiff's Complaint was dated October 9, 2009, but was not filed until October 13, 2009.  (ECF No. 1.)

converter or 02 [oxygen] sensor and contains extreme after factory parts." (Id. ¶¶ 18-19.)
Finally, plaintiff states that the vehicle failed inspection by the Maryland Motor Vehicle
Administration ("Maryland MVA") and cannot be registered in the state of Maryland until it is
repaired. (Id. ¶ 20.)

In Count Three of the Complaint, plaintiff states that "plaintiff provides notice to
[defendant] of his revocation of acceptance, pursuant to Md. Code Ann., U.C.C. § 2-608 . . . as to
the 2008 Mitsubishi Lancer GTS whose nonconformity of condition has substantially impaired
the value of the vehicle." (Id. ¶ 24.)

In Count Four of the Complaint, plaintiff seeks relief for common law fraud. Plaintiff
alleges that, at the time he purchased the vehicle, he "discussed with [defendant] if the condition
of the vehicle was of the standard that it was advertised . . . to be and [defendant] responded that
it was." (Id. ¶ 27.) Plaintiff claims that defendant knew that its statements made to plaintiff
were misrepresentations at the time plaintiff inquired about the condition of the vehicle and that
defendant intended plaintiff to rely on its false representations. (Id. ¶¶ 28-29.) Plaintiff states
that he "did in fact rely on the representations made by [defendant]" and that he "has been
damaged in that the vehicle was not in the condition that [defendant] had represented it to be."
(Id. ¶¶ 30-31.)

In Count Five of the Complaint, plaintiff seeks relief under the Maryland Consumer
Protection Act ("Maryland CPA"). Md. Code Ann., Com. Law § 13-408. Plaintiff alleges that
defendant is a "merchant" subject to all of the Maryland CPA's provisions prohibiting unfair or
deceptive trade practices and that "[defendant's] sale of the vehicle without disclosing that the
vehicle would not pass Maryland's MVA inspection of out of state vehicles was deceptive,
unfair, and violated [the Maryland] CPA." (ECF No. 1 ¶¶ 33-34.) Plaintiff also states that

because there were "after-market parts on the vehicle it is no longer under the manufacturer's warranty." (Id. ¶ 35.)  Finally, plaintiff alleges that "[defendant's] warranty states 'Outside invoice will be honored by the dealer,' however, [defendant] is unwilling to honor an outside invoice." (Id. ¶ 37.)

Accordingly, in his Complaint, plaintiff seeks the following relief:

(1) Treble damages (3 times actual damages) or $1,500.00 statutory damages, whichever is greater, costs, and attorneys' fees on Count One.  (Id.)

(2) Actual damages, consequential damages, costs, and attorneys' fees on Count Two.  (Id.)

(3) Actual damages and special damages on Count Three. (Id.)

(4) Actual damages, consequential damages, and punitive damages on Count Four.  (Id.)

(5) Actual damages, consequential damages, costs, and attorneys' fees on Count Five.  (Id.)

Finally, in the Complaint, plaintiff also seeks an injunction ordering defendant to accept return of the vehicle, return the payments that plaintiff has made to defendant, and return any monies paid or owed on the financing or repair of the vehicle.  (Id.)

Plaintiff was initially represented in this action by Mr. Bernard T. Kennedy, Esq. ("Mr. Kennedy").  On December 13, 2010, the above-referenced case was referred to me for all proceedings with the consent of the parties, pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 35.)  On July 19, 2011, I granted Mr. Kennedy's Motion for Leave to Withdraw as Counsel for Plaintiff.  (ECF No. 53.)  On July 20, 2011, the Clerk informed plaintiff that unless new counsel appeared on his behalf he would be acting as his own attorney in this case.  (ECF No. 54.)  No new counsel has entered an appearance for plaintiff and, accordingly, plaintiff is, and has been, proceeding pro se.

A bench trial was held on December 12, 2011, at which plaintiff and Linda Mauzy, plaintiff's mother ("plaintiff's mother," or "Ms. Mauzy"), testified.  In addition to testimony, plaintiff offered documents into evidence.  Defendant was represented by Mr. Gerald Ruter, Esq. ("Mr. Ruter").  Defendant cross-examined the plaintiff and his mother, and offered one document into evidence, but did not offer any testimony.  The defense raised numerous meritorious challenges to the admissibility of plaintiff's evidence, especially as to plaintiff's damages.  At the conclusion of that hearing, I left the record open and advised the plaintiff that he could supplement the record with the following evidence: (1) testimony from a witness with firsthand knowledge of the invoice and bill from the dealer that performed repairs on the vehicle; and (2) expert testimony to establish the condition of the vehicle when it was delivered to plaintiff, the reasonableness of plaintiff's reliance on defendant's representations, and specifics as to damages.  Accordingly, I issued a letter Order confirming that the record in this case would remain open for thirty days, and directed Mr. Ruter and Mr. Ingram to advise the court by letter by the conclusion of that period as to what additional evidence, if any, either party wished to offer.

By letter dated February 15, 2012, the parties informed the court that they would both like to present expert testimony to supplement the trial record in this case.  (ECF No. 83.) Accordingly, I scheduled a supplemental hearing for May 30, 2012.  (ECF No. 84.)  After I continued the hearing twice upon Mr. Ruter's request (ECF Nos. 89, 91), by letter Order of July 6, 2012, I scheduled a hearing for August 28, 2012 for the parties to offer supplemental evidence ("supplemental hearing"). (ECF No. 92.)

At the supplemental hearing, plaintiff offered the testimony of his expert witness, Anthony Curtis ("Mr. Curtis").  In addition, Ms. Mauzy appeared and supplemented her

testimony, previously offered at trial.  Defendant offered the testimony of its expert witness,

Felix Canino ("Mr. Canino").  In addition, defendant offered the testimony of defendant's co-

owners, Hooshmand "Danny" Kohanano ("Mr. Kohanano") and Fereshteh "Jenny" Kohanano

("Ms. Kohanano"), who are also employees of defendant.

Having reviewed the entire record and all of the evidence offered in this case, both on

December 12, 2011, and on August 28, 2012, I am now prepared to present my findings of fact

and conclusions of law.

## II.   **DISCUSSION**

### A.   **Count One: Violation of Motor Vehicle Cost and Information Act, 49 U.S.C. § 32710**

In Count One, plaintiff alleges that defendant violated the Motor Vehicle Cost and

Information Act, 49 U.S.C. § 32701 et seq.,[2] because: (1) defendant failed to issue either a title

or an odometer statement to plaintiff; or (2) defendant provided an inaccurate odometer

statement; or (3) the odometer reading differs from the provided odometer statement.  (ECF No.

1 ¶ 7.)  Plaintiff's Complaint asserts that defendant "failed to disclose the odometer reading on

the proper title documents in violation of 49 U.S.C. § 580.5."[3]  (Id. ¶ 8.)  It appears that plaintiff

---

[2] A private person must prove the following elements to recover under the Motor Vehicle
Cost and Information Act:

(1) Intent to Defraud; and
(2) Violation of 49 U.S.C. § 32701 et seq.:
    a.  Tampering as defined by section 32703, or
    b.  Removing or altering notice as defined by section 32704, or
    c.  Failing to provide required disclosure upon transfer of ownership as defined by
        section 32705

49 U.S.C. § 32710.

[3] In his Complaint, plaintiff mistakenly cites to the Code of Federal Regulations instead
of citing to the United States Code.

intended to claim that defendant failed to disclose the odometer reading on the title documents in violation of 49 U.S.C. § 32705, which provides that a person transferring ownership of a motor vehicle shall give the transferee either: (1) "[written] disclosure of the cumulative mileage registered on the odometer;" or (2) "[written] disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled." 49 U.S.C. § 32705(a)(1). At trial, on December 12, 2011, plaintiff conceded that there was no issue with the odometer reading on the vehicle and stated that he had no evidence to offer as to defendant's wrongdoing as alleged in Count One. Plaintiff did not offer any additional evidence as to defendant's wrongdoing as alleged in this Count at the supplemental hearing. Accordingly, I deny plaintiff's request for relief pursuant to Count One.[4]

### B. Count Two: Breach of Implied Warranty of Merchantability

In Count Two, plaintiff asserts a claim for "[defendant's] breach of implied warranty of merchantability."[5] (ECF No. 1 ¶ 12.) Plaintiff seeks relief under both federal law—the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308, and state law—Section 2-314 of the Uniform Commercial Code ("U.C.C.") as codified in the Annotated Code of Maryland, Commercial Law Article, Section 2-314. (Id. ¶ 12.) The Magnuson-Moss Warranty Act provides that a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any . . . implied warranty," may "bring suit for damages and other legal and equitable relief in any

---

[4] The court notes with concern that the record does not reflect any facts supporting a good faith basis for plaintiff's then counsel, Mr. Kennedy, to file this claim.

[5] In the pretrial Order, plaintiff also sought damages for defendant's alleged breach of express warranties. Plaintiff did not allege that defendant breached express warranties in his Complaint, nor has plaintiff articulated an express warranty theory at trial. Accordingly, plaintiff cannot recover damages under a theory of breach of express warranty.

court of competent jurisdiction in any state or the District of Columbia." 15 U.S.C. §

2310(d)(1).[6]

As an initial matter, I note that, notwithstanding the Complaint's invocation of a federal

statute, resolution of plaintiff's claim for breach of implied warranty of merchantability turns

largely on principles of state law. Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir.

1989). The Fourth Circuit has recognized that the Magnuson-Moss Warranty Act operates in

conjunction with state law to regulate the warranting of consumer products. Id. The statute itself

defines an "implied warranty" as one "arising under State law (as modified by . . . this title) in

connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).

Accordingly, actions for breach of limited or implied warranties as defined by the Magnuson-

Moss Warranty Act are governed by the application of substantive state law. Laing v.

Volkswagen of Am., Inc., 949 A.2d 26, 38 (Md. Ct. Spec. App. 2008).

> The Fourth Circuit has explained that, under Maryland law:
>
> A warranty of merchantability is implied in the sale of goods by a merchant who deals in goods of that kind. To be merchantable, goods must "[p]ass without objection in the trade under the contract description" and must "be fit for the ordinary purpose for which such goods are used." Whether a good is merchantable also depends in part on usage of trade. This definition of merchantability incorporates trade quality standards and the consumer's reasonable expectations into the concept of merchantability. In the case of automobiles, the implied warranty of merchantability "not only warrants that the automobile will operate effectively, but that it will provide reasonably safe transportation."

Robinson v. Am. Honda Motor Co., 551 F.3d 218, 225 (4th Cir. 2009) (citations omitted). A

seller who breaks this warranty is responsible to the person who sustains injury as a result. Md.

Code Ann., Com. Law § 2-314 & cmt. 13. A "seller" includes "the manufacturer, distributor,

---

[6] The chief advantage of proceeding under the Magnuson-Moss Warranty Act for breach of implied warranty (as opposed to merely proceeding under state law) is that the statute also provides for an award of attorneys' fees to a prevailing consumer. 15 U.S.C. § 2310(d)(2).

dealer, wholesaler or other middleman or the retailer." Md. Code Ann., Com. Law § 2-314(1)(a).

A plaintiff must establish the following elements to recover for a breach of implied warranty of merchantability:

(1) A warranty existed; and
(2) The product did not conform to the warranty and thus the warranty was breached; and
(3) The breach of warranty by the seller was the cause of the injury to the user or third party.

Lloyd v. Gen. Motors Corp., 916 A.2d 257, 285-86 (Md. 2007). The injury arises when the seller fails to tender the goods in a manner that is fit for ordinary purposes. Id. at 287. In addition, a seller is not responsible for a breach of warranty unless the buyer gives the seller notice of the breach "within a reasonable time after he discovers or should have discovered any breach." Md. Code Ann., Com. Law § 2-607(3)(a).

The remedy for a breach of warranty available to a buyer who has accepted nonconforming goods and given notice is set forth in Section 2-714 of the Commercial Law Article of the Annotated Code of Maryland, which provides:

(1) Where the buyer has accepted goods and given notification . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
(3) In a proper case any incidental and consequential damages . . . may also be recovered.

Md. Code Ann., Com. Law § 2-714.

At trial, plaintiff testified that he bought the vehicle from defendant after viewing defendant's Internet advertisement ("web ad") for the vehicle and having telephone

conversations about the vehicle with defendant's employees.[7]  Plaintiff did not test-drive the

vehicle or examine the vehicle before he purchased it.  Plaintiff executed two sales contracts to

complete the purchase of the vehicle.  (Pl. Exs. 43-44).[8]  (Pl. Ex. 45.)  Both of the sales contracts

submitted by plaintiff state as follows:

> Important notice to used vehicle buyer:  (a) [New York] State law requires that sellers of
> secondhand cars certify in writing to the buyer that each car is in a safe condition at the
> time of sale. (b) This certification is a guarantee that the car is in safe condition at the
> time of sale. (c) Buyer has a right to request the dealer to repair or pay in full for repairs
> or any unsafe condition in the car which does not comply with this certification.

(Pl. Exs. 41, 43-44.)

At trial, plaintiff alleged that, based on defendant's web ad and the telephone

conversations that he had with defendant's employees, he believed that he was purchasing a

vehicle that was in "good condition" or "excellent condition" and had "options," but that when

the vehicle was delivered to him in Cumberland, Maryland, on September 17, 2009, he observed

that it did not have these features.  Plaintiff alleged that "the vehicle, as sold to plaintiff, would

not pass in the trade under the description of a 'Used' 2008 Mitsubishi Lancer."  (ECF No. 1 ¶

13.)  In addition, plaintiff testified that, on September 17, 2009, he drove the vehicle one mile to

his mother's house to store it until it was licensed in Maryland (because it would be towed if it

was on the street without Maryland tags), and that, during the drive, he noticed additional

problems with the vehicle.  Specifically, plaintiff testified at trial that he observed the following

defects in the vehicle on September 17, 2009:

(1)     "Check engine" light was on;
(2)     There were "dings" in the door;

---

[7] The findings of fact set forth in this section are pertinent to the discussion of each of
plaintiff's causes of action discussed below.

[8] The print on the sales contract is not legible, but document appears to set forth warranty
terms under New York law.

(3)     There was no spoiler on the trunk;

(4)     The vehicle did not have heated seats or power seats;

(5)     The rim of the wheel on the back of the driver's side was bent;

(6)     There were exposed wires by the corner of the driver's seat;

(7)     There was a hole in the metal bracket on the left of the driver's seat;

(8)     There were white "specs" on the top of the motor;

(9)     The top of the hood was not aligned properly and the hood was chipped;

(10)    The VIN number in the front of the vehicle did not match the VIN number on the trunk;

(11)    The idle on the vehicle was not working/not getting fuel;

(12)    The vehicle had a manual transmission, not a 5-speed automatic transmission as he thought it would have from the representations made in defendant's web ad;

(13)    The vehicle smelled like burning oil/fuel;

(14)    The vehicle was not "shifting right" or "running like it should be" because, even when shifting manually, plaintiff could not get the car past 4,000 RPMs; and

(15)    Plaintiff was "fighting with the steering wheel" on the drive to his mother's house.

At trial, plaintiff offered the following evidence to support his testimony: (1) a copy of defendant's web ad, which states that the vehicle is in "excellent condition," has an "automatic transmission," "power seat," "heated seats," and equipment including "front floor mats," and a "rear spoiler," and lists a contact telephone number of 718-777-2112 (Pl. Ex. 77); (2) telephone records from plaintiff's phone, which show outgoing calls on September 2-3, 2009, to the telephone number 718-777-2112, the contact number listed on defendant's web ad, as well as calls to another telephone number that plaintiff testified belonged to defendant, which is identified by the phone records as being located in New York (Pl. Exs. 2-3); (3) photos of the vehicle that defendant included in the web ad (Pl. Exs. 78-80); and (4) photos of the vehicle that plaintiff testified that he took on September 17, 2009, the day that he received the vehicle from defendant.[9]   The photos admitted into evidence depict: (1) a bent wheel rim (Pl. Ex. 83A); (2) the

---

[9] Defense counsel noted an objection to eight of the twelve photos because plaintiff had not provided those eight photos to defendant during discovery.  Defense counsel did not object to the four photos plaintiff had provided defendant during discovery.  The four photos to which defense counsel did not note an objection were admitted into evidence.  (Pl. Ex. 83A-83D).

rear of the vehicle, which does not have a spoiler attached to it (Pl. Ex. 83B), (3) a VIN number

on the vehicle (Pl. Ex. 83C), and (4) the interior of the vehicle, in which a stick shift used for a

manual transmission is clearly visible. (Pl. Ex. 83D.)

At the supplemental hearing, Mr. Kohanano testified, on behalf of the defense, that he

purchased the vehicle at a used car auction in the normal course of business.  Before he

purchased the vehicle, he inspected it and started the engine, and observed that, although the

engine was modified, the vehicle was operating normally.  Mr. Kohanano also testified that, after

he purchased the vehicle, and before defendant advertised the vehicle for sale, pursuant to

defendant's standard procedures, he had Mr. Canino, an automotive mechanic, examine the

vehicle.

Mr. Canino testified at the supplemental hearing, as defendant's expert witness,[10] that he

became aware of the vehicle when, per defendant's standard practice, defendant called Mr.

Canino and asked him to examine the vehicle before defendant offered it for sale.  Mr. Canino

drove the vehicle to the garage where he is employed, Freddy's Auto, to examine it.  Mr. Canino

testified that the "check engine" light was on in the vehicle because of the modifications to the

engine, but that the car was "running good."  Mr. Canino also testified that, although the vehicle

"idled a little rough" because of its after-market parts, upon examining the vehicle, he concluded

that it was in an operable condition and that no repairs needed to be performed on the vehicle

prior to defendant offering it for sale.

Mr. Kohanano further testified that, after Mr. Canino examined the vehicle, defendant

---

[10] Mr. Canino testified that he has been employed as an automotive mechanic at Freddy's
Auto for four years.  Among his other duties, Mr. Canino examines cars for defendant before
defendant offers them for sale.  Prior to his present employment, Mr. Canino was employed at
Harriman BMW, United Nissan, and Cooper Nissan.  He is a certified technician for BMW and
Nissan as well as a certified inspector for the state of New York.  Mr. Canino was accepted by
the court as an expert in the field of evaluating and repairing vehicles.

advertised the vehicle for sale on the Internet.  (Pl. Ex. 76.)  Mr. Kohanano testified that, in

accordance with defendant's standard practice, an employee of defendant, Eric, created the web

ad by entering the VIN number of the vehicle into the CARFAX website, which automatically

generated a list of the vehicle's features.  Mr. Kohanano also testified that Eric took nine photos

of the vehicle and included them in the web ad.  Mr. Kohanao stated that it was defendant's

routine to include photos in its web advertisements "so that customers have enough information

to purchase a car."  Another of defendant's employees, Ms. Kohanano, also testified that

defendant's web ad was created automatically by entering the VIN number of the vehicle.

Mr. Kohanano and Ms. Kohanano both testified that plaintiff was an unusual customer, as

he was the only customer to whom defendant had ever sold a vehicle who did not personally

examine the vehicle, have a designee examine the vehicle, or hire a company to perform a pre-

purchase inspection on his behalf.  Mr. Kohanano also testified that plaintiff never inquired

before purchasing the vehicle whether the vehicle would pass Maryland inspection.

At trial, plaintiff and Ms. Mauzy both testified that, beginning on September 18, 2009,

the day after the vehicle was delivered, they both made numerous telephone calls to defendant to

inform defendant of the defects with the vehicle.  In those telephone calls, plaintiff and Ms.

Mauzy spoke with two employees of defendant: Angel, a supervisor, and Ms. Kohanano.

According to testimony offered by plaintiff, Ms. Kohanano told plaintiff that the vehicle was still

under factory warranty and faxed plaintiff a copy of the CARFAX vehicle history report to

demonstrate this fact.  Plaintiff and his mother also testified that Ms. Kohanano told them that,

because the vehicle was still under factory warranty, plaintiff should take the vehicle to an

authorized Mitsubishi dealership to get the problems taken care of.  On or about the following

day, plaintiff located the nearest authorized Mitsubishi dealer, Younger Toyota ("Younger"), in

Hagerstown, Maryland, and arranged for the vehicle to be towed on September 21, 2009, from his mother's house to the dealer to be examined.  Plaintiff testified that he had the car towed to the dealer because he did not think he should drive the vehicle for one hour from Cumberland, Maryland, to Hagerstown, Maryland because it was running so poorly.  In support of his testimony, plaintiff submitted: (1) telephone records from plaintiff's phone and Ms. Mauzy's phone, which show numerous calls made from both phone lines on September 18-21, 2009 to the telephone number 718-777-2112, the contact number listed on defendant's web ad, as well as calls to other telephone numbers that plaintiff testified belonged to defendant, which phone records identify as being located in New York (Pl. Exs. 2-33); (2) the fax from Ms. Kohanano containing the CARFAX vehicle history report (Pl. Exs. 35-38), which has a check mark next to the words "warranty active" (Pl. Ex. 36); and (3) the towing receipt from the towing company dated September 21, 2009.[11]  (P. Ex. 58.)

In his Complaint, plaintiff states that the vehicle failed inspection by the Maryland MVA and cannot be registered in the state of Maryland until it is repaired.  (Id. ¶ 20.)  At trial, plaintiff testified that he believed that the vehicle would be delivered to him in a condition sufficient to pass state inspection but that, on September 22, 2009, after Younger examined the car, Younger informed plaintiff that the vehicle was not under warranty and that the vehicle would not pass Maryland MVA inspection in its present condition.  Plaintiff testified that Younger provided plaintiff with two separate written estimates: (1) an estimate for repairs to return the vehicle to a condition to be under factory warranty in the amount of $8129.02; and (2) an estimate for repairs necessary for the vehicle to pass Maryland MVA inspection in the amount of $5000.00.  In

---

[11] Plaintiff's towing receipt does not list a total amount due because, as plaintiff testified, Younger paid the towing costs incurred to tow plaintiff's car from Cumberland, Maryland to Hagerstown, Maryland.

support of his testimony, plaintiff submitted copies of the two written estimates from Younger

dated September 22, 2009, which quote the amount of $8129.02 to return the vehicle to factory

warranty condition (Pl. Ex. 59), and the amount of $4937.02 to make the repairs necessary for

the vehicle to pass Maryland MVA inspection.  (Pl. Ex. 60.)   The estimate for repairs necessary

for the vehicle to pass state inspection lists defects in the vehicle, including: a missing catalytic

converter, problems with the exhaust manifold, problems with the "air box hoses," and issues

with the vehicle's tire rims and the alignment of the tires.  (Id.)

At the supplemental hearing, plaintiff's expert, Mr. Curtis,[12] testified that the vehicle

arrived at Younger's on September 21, 2009.  Younger examined the vehicle, according to its

standard practices.  Mr. Curtis became aware of the vehicle when, after the vehicle was

examined, Jonathan Baker, a certified inspector, and Joe Holiday, a service advisor, informed

Mr. Curtis that the vehicle was missing certain components that were necessary for the vehicle to

pass Maryland inspection.  The missing components included a mass airflow sensor, a catalytic

converter, oxygen sensors, a windshield washer, and an air box.  On cross-examination, Mr.

Curtis testified that the vehicle was missing these components because it had been modified, or

"souped up."  Mr. Curtis also testified that, although the vehicle could not pass Maryland

inspection, the vehicle was operable when it arrived at Younger Toyota on September 21, 2009.

At trial, plaintiff testified that, after Younger informed plaintiff the vehicle was not under

factory warranty, plaintiff telephoned defendant.  Plaintiff told defendant's employee Angel that

---

[12] Mr. Curtis testified that he has been employed as the parts and service manager for Younger Toyota for four years.  In this capacity, Mr. Curtis reviews the paperwork documenting what work a vehicle that has failed Maryland MVA inspection needs to pass and orders the necessary parts for repairs.  Mr. Curtis also testified that this has been the nature of his work since 1980.  The court accepted Mr. Curtis as an expert as to evaluating and repairing vehicles, as well as to Maryland MVA inspection.

the car was not under factory warranty and informed Angel about the defects in the vehicle that

needed repair.  Angel told plaintiff that the vehicle was not under warranty because it was

"souped up," swore at plaintiff, and hung up on him.  On September 23, 2009, Ms. Mauzy,

plaintiff's mother, sent a fax to defendant that contained a copy of Younger's estimate for the

repairs necessary to enable the vehicle to pass Maryland MVA inspection and stated that plaintiff

was expecting defendant "to take immediate action on this matter by contacting Younger . . . and

making arrangements of payment to get this car fixed."  (Pl. Exs. 68-69.)  In that fax, Ms. Mauzy

also stated that if the matter was not resolved on that day, "legal action will be taken immediately

on our part."  (Pl. Ex. 68.)  Plaintiff and Ms. Mauzy testified that, after the September 23, 2009

fax, they both contacted the defendant by telephone and said they wanted to return the car, but

Mr. Kohanano told plaintiff that "all sales are final."  After receiving plaintiff's September 23,

2009 fax, defendant's employee Angel requested more information about the situation.  In

response, Ms. Mauzy sent another fax on September 26, 2009, which contained plaintiff's

recollections of the events since plaintiff received the vehicle.  In support of his testimony,

plaintiff submitted the following evidence: (1) telephone records from plaintiff's phone and Ms.

Mauzy's phone, which show numerous calls made from both phone lines on the following dates:

September 22-26, 2009, September 30, 2009; October 2, 2009; October 8, 2009; and October 16,

2009 to the telephone number 718-777-2112, the contact number listed on defendant's web ad,

as well as calls to other telephone numbers that plaintiff testified belonged to defendant, which

are phone records identify as being located in New York (Pl. Exs. 2-33); (2) a copy of Ms.

Mauzy's fax to defendant dated September 23, 2009[13] (Pl. Exs. 68-70); and (3) a copy of Ms.

Mauzy's fax to Angel dated September 26, 2009.[14]  (Pl. Exs. 71-73.)

---

[13] The copy does not have markings indicating that it was sent via facsimile.

At trial, plaintiff also testified that when defendant would not accept return of the vehicle, plaintiff instructed Younger to repair the vehicle to the extent necessary to pass state inspection. Plaintiff testified that Younger repaired the vehicle during the time period of October 1-15, 2009. Plaintiff filed this action on October 13, 2009.  Plaintiff stated that he paid Younger $5000.00 for these repairs on October 15, 2009.  In support of his testimony, plaintiff submitted the repair invoice from Younger in the amount of $5,546.12, which has a stamp on the document indicating that the invoice was paid on October 15, 2009.  (Pl. Exs. 61-63.)  That invoice states that "the tech only perform work that the car needed to pass Maryland state inspection.  The way this car was sold to the customer it would not be legal for it to be driven in this state."  (Id.)

At the supplemental hearing, Mr. Kohanano testified that he told plaintiff that defendant would not honor an outside repair invoice, but that if plaintiff returned the vehicle to defendant, defendant would either repair the vehicle or cancel the sales contract and return plaintiff's payment for the vehicle.  According to Mr. Kohanano, Plaintiff told Mr. Kohanano that he did not want to bring the vehicle back to defendant, and wanted his mechanic to fix the vehicle instead.  Mr. Kohanano testified that it is defendant's normal practice not to honor outside repair invoices because defendant does not want to risk incurring the cost for unnecessary repairs or deceptive charges.  Mr. Kohanano then testified that defendant makes buyers aware of this practice by stating that "No outside invoice will be honored by the dealer" in its standard warranty, which is labeled "Buyer's Guide."  Mr. Kohanano also testified that defendant affixes a copy of its Buyer's Guide, which was admitted into evidence, to the window of every vehicle

---

[14] The copy does not have markings indicating that it was sent via facsimile.  The document is dated September 26, 2009 on the first page, but the text of the document references events happening after that date.  Plaintiff and his mother signed the document on the last page and dated their signatures December 17, 2009.  The discrepancies in the dates, however, are not material to the court's findings.

that it sells.  (Def. Ex. 1.)

Ms. Kohanano also testified that she spoke with Ms. Mauzy and plaintiff after plaintiff received the vehicle.  Ms. Kohanano stated that she told Ms. Mauzy that the vehicle would have to be brought to defendant's facility to be fixed, but that plaintiff and Ms. Mauzy did not want to return the vehicle to defendant.  Ms. Kohanano testified that Ms. Mauzy told Ms. Kohanano that the vehicle was already at Younger.  Ms. Kohanano testified that she told Ms. Mauzy that plaintiff and Ms. Mauzy would be responsible for any repairs made to the vehicle by Younger, because, in accordance with the Buyer's Guide, defendant would not honor an outside invoice.

As noted above, a warranty of merchantability was implied in the sale of the vehicle, a used car, to plaintiff because it was sold by defendant, a used car dealer, dealing in goods of that kind.  The implied warranty of merchantability warrants both that the vehicle will operate effectively and will provide reasonably safe transportation.  Robinson, 551 F.3d at 225 (citation omitted).  In this case, although plaintiff has testified that the vehicle was not delivered in the condition that he expected it to be, plaintiff has presented no evidence, other than his subjective belief, that, when it was delivered, the vehicle was either unsafe or inoperable.  Although plaintiff has not specifically argued the point,[15] the court has considered whether the vehicle could be considered inoperable because it could not pass Maryland inspection.  There is no evidence, however, establishing that a vehicle's inability to pass state inspection is equivalent to a finding of a vehicle's inoperability.  Indeed, both expert witnesses in this case, including plaintiff's expert, Mr. Curtis, testified that the vehicle was operable.  Nor is there any evidence that the vehicle was unsafe; evidence that the vehicle was modified or "souped up" does not

_____

[15] It should be noted that plaintiff, acting pro se, competently presented his evidence to the court.  Plaintiff has not, however, offered any analysis as to the application of the legal principles at issue in this case to the facts presented.  As a result, the court herein has attempted to exhaustively anticipate and address all legal issues that could have been raised by plaintiff.

establish that the vehicle was unsafe.  Accordingly, because plaintiff has not established a breach of the implied warranty of merchantability, plaintiff's request for relief pursuant to Count Two is denied.

### C.  <u>Count Three: Revocation of Acceptance</u>

Count Three of plaintiff's Complaint summarily states that "plaintiff provides notice to [defendant] of his revocation of acceptance, pursuant to Md. Code Ann., U.C.C. § 2-608, entitled Revocation of Acceptance, as to the 2008 Mitsubishi Lancer GTS whose nonconformity of condition has substantially impaired the value of the vehicle."  (ECF No. 1 ¶ 24.)  A buyer who revokes his acceptance of nonconforming goods has the same rights and duties with regard to the goods involved as if he had rejected them.  Md. Code Ann., Com. Law § 2-608(3).  It is well-established that notification to the seller of the buyer's revocation of acceptance of particular goods, as well as notice to seller, within a reasonable period of time, of the nonconformity in the goods materially impairing their value to the buyer is a prerequisite for a revocation of acceptance under Section 2-608 of the Maryland Commercial Law Article.[16]  <u>See Lynx, Inc. v.</u>

---

[16] The statute provides that:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
    (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
    (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  <u>It is not effective until the buyer notifies the seller of it</u>.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Md. Code Ann., Com. Law § 2-608 (emphasis added).

Ordnance Prods., Inc., 327 A.2d 502, 512-13 (Md. 1974) ("[T]he form and content of such notice of revocation should inform the seller that the buyer has revoked, identify the particular goods as to which he has revoked and set forth the nature of the nonconformity since such notice would corroborate the buyer's good faith and give the seller an opportunity to make a substitute performance to maintain good will or to avoid litigation.").  As to the requisite notice, the Maryland Court of Appeals has stated that:

> Since the existence of a right of action is conditioned upon whether notification has been given the seller by the buyer, where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.'  Thus the institution of an action by the buyer to recover damages cannot by itself be regarded as a notice of the breach contemplated under [Section] 2-608(2).

Id. at 514.  In addition, "any action taken by the buyer, which is inconsistent with his claim that he has rejected the goods, constitutes an acceptance."  Md. Code Ann., Com. Law § 2-606(c) & cmt. 4.  In this way, "a buyer can bind himself, despite his insistence that he is rejecting or has rejected the goods, by an act inconsistent with the seller's ownership . . . [or] by a communication of acceptance despite a prior rejection . . . ."  Md. Code Ann., Com. Law § 2-606 cmt. 4.

Here, plaintiff testified that he told defendant that he wanted to return the vehicle in a telephone conversation on or about September 23, 2009.  At the supplemental hearing, both Mr. and Ms. Kohanano testified that they offered to let plaintiff return the vehicle to defendant and refund the purchase price, but that plaintiff refused to return the vehicle to defendant.  The faxes sent by plaintiff's mother on September 23, 2009 and September 26, 2009 do not state that plaintiff wants to return the vehicle.  (Pl. Exs. 68-73.)  Plaintiff filed the Complaint on October 13, 2009.  Thereafter, on October 15, 2009, plaintiff paid for repairs to be made to the vehicle.  (Pl. Ex. 61.)  At the supplemental hearing, plaintiff's mother, Ms. Mauzy, testified that defendant

did not offer to let plaintiff return the vehicle until after repairs were made to the vehicle, and

that defendant never offered to refund the purchase price of the vehicle.  At trial, plaintiff

testified that he still owns the vehicle and uses it for transportation.  Plaintiff's possession and

use of the vehicle, as well as plaintiff's payment for repairs to be made to the vehicle, are acts

that are inconsistent with defendant's ownership of the vehicle and constitute an acceptance of

the vehicle within the meaning of Section 2-606 of the Maryland Commercial Law Article.  Md.

Code Ann., Com. Law § 2-606.  Accordingly, because plaintiff has not established his revocation

of acceptance of the vehicle in accordance with Section 2-608, plaintiff's request for relief

pursuant to Count Three of the Complaint is denied.

### D.  Count Four: Fraud

In Count Four, plaintiff seeks relief for common law fraud.  A party who alleges fraud on

the part of another has the burden of proving the claim by clear and convincing evidence.  Sass v.

Andrew, 832 A.2d 247, 259 (Md. Ct. Spec. App. 2003).  To be clear and convincing, evidence

should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous, and

"convincing" in the sense that it is so reasonable and persuasive as to cause you to believe it.

See Coleman v. Anne Arundel Cnty. Police Dep't, 797 A.2d 770, 781 n.16 (Md. 2002)

(distinguishing the clear and convincing standard from preponderance of the evidence and

reasonable doubt).

In order to recover damages in an action for fraud or deceit under Maryland law, a

plaintiff must prove five elements:

 (1) That the defendant made a false representation to the plaintiff;
 (2) That its falsity was either known to the defendant or that the representation was made
   with reckless indifference as to its truth;
 (3) That the misrepresentation was made for the purpose of defrauding the plaintiff;
 (4) That the plaintiff relied on the misrepresentation and had the right to rely on it; and
 (5) That the plaintiff suffered compensable injury resulting from the misrepresentation.

<u>Nails v. S & R, Inc.</u>, 639 A.2d 660, 668-69 (Md. 1994).  "A 'false representation' is a statement, conduct, or action that intentionally misrepresents a material fact."  <u>Sass</u>, 832 A.2d at 260.  "A 'material' fact is one on which a reasonable person would rely in making a decision."  <u>Id.</u>  The defendant must have knowledge of, or show reckless indifference to, the representation's falsity.  <u>Id.</u>  The words "reckless indifference . . . do not signify a representation which the defendant, through negligence, believes to be true.  Instead, the words [are] used in fraud cases to connote the defendant's awareness that he does not know whether the representation is true or false."  <u>Ellerin v. Fairfax Savs., F.S.B.</u>, 652 A.2d 1117, 1124 (Md. 1995).  The Maryland Court of Appeals has emphasized that "recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive."  <u>Id.</u>

Plaintiff alleges in his Complaint that, at the time he purchased the vehicle, he "discussed with [defendant] if the condition of the vehicle was of the standard that it was advertised . . . to be and [defendant] responded that it was."  (ECF No. 1 ¶ 27.)  Plaintiff claims that defendant knew that its statements made to plaintiff were misrepresentations at the time that plaintiff inquired about the condition of the vehicle and that defendant intended for plaintiff to rely on its false representations.  (<u>Id.</u> ¶¶ 28-29.)  In his Complaint, plaintiff also states that he "did in fact rely on the representations made by [defendant]" and that he "has been damaged in that the vehicle was not in the condition that [defendant] had represented it to be."  (<u>Id.</u> ¶¶ 30-31.)

At trial, plaintiff testified that he saw defendant's web advertisement of the vehicle and discussed the condition of the vehicle with defendant's employees on the telephone before he decided to purchase it.  Plaintiff testified that, based upon the web ad and the telephone conversations, he believed that he was purchasing a vehicle that was in "good condition" and had "options," but that, when the vehicle was delivered to him, these options were missing.  (Pl. Exs.

2-3, 77.)

At the supplemental hearing, both Mr. and Ms. Kohanano testified that another employee of defendant created the web ad (Pl. Ex. 77), in accordance with their standard practice, by entering the vehicle's VIN number into the CARFAX website, which automatically generated a vehicle history report that included a list of the equipment in the vehicle.  Ms. Kohanano testified that New York law requires defendant to include the CARFAX vehicle history report in every web advertisement that it generates.  Mr. Kohanano testified that, pursuant to defendant's standard practice, defendant included nine photos of the vehicle in the web ad.  Ms. Kohanano also testified that, pursuant to New York law, the following text was written at the bottom of the web ad:

> Please confirm the accuracy of the specifications provided above with the dealer's representative.  Neither the dealer nor the provider of the information is responsible for misprints or errors regarding this data.

(Pl. Ex. 77.)  Mr. and Ms. Kohanano also testified that, despite being provided the opportunity to do so, plaintiff did not conduct a pre-purchase inspection of the vehicle.

Although plaintiff did not specifically explain his legal position at trial, he appears to contend that the web ad and his telephone conversations with defendant's employees about the condition of the vehicle before he purchased it are sufficient to prove that defendant made a false representation of material fact.[17]  Specifically, plaintiff testified that defendant told him that the vehicle was in the advertised condition when the vehicle was not in the advertised condition.  It follows, plaintiff appears to maintain, that defendant knew the vehicle was not in the advertised condition and that defendant acted with the intent to deceive plaintiff.  No evidence has been

---

[17] At trial, I provisionally allowed testimony regarding the telephone conversations between plaintiff and defendant's employees and reserved ruling on defendant's hearsay objection.  In accordance with Federal Rule of Evidence 801(d)(2)(D), defendant's objection is overruled and the testimony is admitted.

presented, however, that defendant acted with the intent to deceive plaintiff when defendant's employees spoke to plaintiff about the condition of the vehicle before defendant sold it to plaintiff.  The testimony offered regarding defendant's representations was very general; according to plaintiff, defendant's employees confirmed that the vehicle was in excellent condition.  Although it is clear that the car did not have certain features that the web ad said it did, i.e., automatic transmission, heated seats, or power seats, the court cannot conclude on this record that defendant intentionally misrepresented these facts.  Defendant's practice of merely entering a VIN number which then automatically generates a list of equipment in the car certainly resulted in an inaccurate listing of the vehicle's features.  The record does not reflect, however, that defendant knew of the inaccuracy or acted with reckless indifference for the truth. The list of features in the web ad, which was automatically generated based on the VIN, is required by New York state law.  It was not unreasonable for defendant, following its standard practice, to assume the accuracy of the list of equipment generated in the web ad, rather than checking each of the dozens of features.  See Hoffman v. Stamper, 667 A.2d 276, 302 (Md. 2005) (reckless indifference means the person making the statement "has actual knowledge that he or she does not know whether the statement is true or false, but with reckless indifference to the truth, makes the statement with the intent of deceiving the listener.")  Nor does the record reflect that any inaccurate information in the web ad was presented for the purpose of defrauding the plaintiff.  To the contrary, the photos included in the web ad demonstrate that defendant intended to provide plaintiff with an accurate representation of the condition of the vehicle before it was sold.

Furthermore, the web ad clearly directed the purchaser to "confirm the accuracy of the specifications provided" in the advertisement.  Plaintiff has presented no evidence that he

inquired about the accuracy of the particular specifications included in the web ad before he purchased the vehicle, other than the general discussions noted above.  In addition, plaintiff never sought to inspect the vehicle, despite defendant's offer that he do so.  Defendant's actions are inconsistent with the requisite intent to defraud necessary to sustain a cause of action for fraud.

In sum, plaintiff has not offered clear and convincing evidence that defendant deliberately intended to deceive plaintiff as required to establish fraud.  See Ellerin, 652 A.2d at 1125 (holding that fraud occurs only if "a falsehood be knowingly told, with an intention that another should believe it to be true and act upon it" (internal quotation marks and citation omitted)).  Accordingly, I deny plaintiff's request for relief pursuant to Count Four of the Complaint.

### E.  Count Five: Violation of the Maryland Consumer Protection Act

In Count Five, plaintiff alleges violations of the Maryland Consumer Protection Act ("CPA"), which prohibits unfair or deceptive trade practices in the offer and sale of consumer goods.  Md. Code Ann., Com. Law §§ 13-301, 13-303.  The Act was intended to provide minimum standards for the protection of consumers in Maryland and provides that, "[i]n addition to any action by the [Consumer Protection] Division or Attorney General . . . any person may bring an action to recover for injury or loss sustained by him as the result of [an unfair or deceptive trade] practice prohibited by this title."  Id. § 13-408(a).[18]  Covered transactions under the Maryland CPA include "the sale, lease, rental, loan, or bailment of any consumer goods" as well as "the offer for sale, lease, rental, loan, or bailment of consumer goods."  Id.  § 13-303.

---

[18] The Act also provides that "[a]ny person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees."  Md. Code Ann., Com. Law § 13-408(b).

Maryland courts have emphasized that a private consumer bringing an action under the Act must show actual injury or loss sustained as a result of a practice prohibited by the Act to establish a private right of action under the statute.  McGraw v. Loyola Ford, Inc., 723 A.2d 502, 512 (Md. Ct. Spec. App. 1999).  The Act defines, in pertinent part, unfair or deceptive trade practices to include any:

> (1) False, falsely disparaging, or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
> (2) Representation that: (i) Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; (ii) A merchant has a sponsorship, approval, status, affiliation, or connection which he does not have; (iii) Deteriorated, altered, reconditioned, reclaimed, or secondhand consumer goods are original or new; or (iv) Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; [or a]
> (3) Failure to state a material fact if the failure deceives or tends to deceive.

Md. Code Ann., Com. Law § 13-301(1)-(3).

In Count Five, plaintiff claims that defendant violated the Maryland CPA because "[defendant's] sale of the vehicle without disclosing that the vehicle would not pass Maryland's MVA inspection of out of state vehicles was deceptive [and] unfair." (ECF No. 1 ¶¶ 33-34.)  In the parties' joint pretrial order (ECF No. 68), defendant conceded that the sale of the vehicle is a transaction to which the Maryland CPA applies.  (ECF No. 68 at 4.)  Although plaintiff does not specify the provision of the Act under which he is seeking relief, it appears that, as to this claim, the only provision that plaintiff could be relying upon is Subsection (3) of Section 301 of the Act, which provides that a "failure to state a material fact if the failure deceives or tends to deceive" is an unfair or deceptive trade practice.  Md. Code Ann., Com. Law § 13-301(3).  The Maryland Court of Appeals has explained that a statement or omission is considered "material" under the CPA if "a significant number of unsophisticated consumers would attach importance to

the information in determining a choice of action." <u>Golt v. Phillips</u>, 517 A.2d 328, 332 (Md. 1986); Restatement (Second) of Torts § 538 (1977) (a fact is deemed material if a reasonable person "would attach importance to its existence or nonexistence in determining his choice of action").

At trial, plaintiff testified that, when he purchased the vehicle, he believed that the vehicle would pass Maryland MVA inspection.  No evidence was offered by plaintiff, however, that he ever asked defendant whether the vehicle would pass Maryland MVA inspection.  Nor was there any evidence that defendant told plaintiff that the vehicle would pass Maryland MVA inspection.  Mr. Kohanano specifically testified that plaintiff did not inquire whether the vehicle would pass Maryland MVA inspection prior to purchasing it.  Thus, there is no evidence of any overt misrepresentations by defendant regarding whether the vehicle would pass Maryland MVA inspection.  Nor can this court conclude that defendant had an affirmative obligation to disclose that the vehicle would not pass Maryland MVA inspection.  Defendant is a New York used car dealer.  There is no evidence that defendant would have any knowledge or expertise regarding Maryland MVA inspection requirements.  While there is no doubt that this fact might be of importance to a Maryland consumer, there is no evidence here that plaintiff ever discussed this fact with defendant.  Nor can the court conclude that it was reasonable for a Maryland purchaser to assume that a vehicle purchased from a New York used car dealer would pass Maryland MVA inspection.  Accordingly, I find that plaintiff has not established by a preponderance of the evidence that defendant's actions in the sale of the vehicle constitute an unfair or deceptive trade practice as defined by Section 13-301(3) of the Maryland CPA.  Plaintiff's request for relief pursuant to Count Five of the Complaint is denied.[19]

[19] The undersigned notes that, although plaintiff does not clearly state this claim in Count Five of his Complaint, the allegations that plaintiff articulates in other counts appear to support a contention that defendant's conduct also constitutes a violation of Section 13-301(2) of the Maryland CPA.  Section 13-301(2) provides, in pertinent part, that an unfair or deceptive trade practice includes any representation that "consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have."  Md. Code Ann., Com. Law § 13-301(2).  Plaintiff alleged that the vehicle was advertised as being in "excellent condition," and having certain "options," but that, when it was delivered, the vehicle was missing several advertised features.  (ECF No. 1 ¶¶ 14-15.)  As discussed above, plaintiff testified at trial that when the vehicle was delivered to him it did not have a power seat, heated seats, a rear spoiler, or front floor mats, among other defects.  In addition, plaintiff testified that the vehicle was advertised as having an automatic transmission, but that the vehicle that was delivered to him had a manual transmission and was not "shifting right."  To support his testimony, plaintiff offered, among other evidence, defendant's web ad listing the options in question (Pl. Ex. 77), and photos of the vehicle that plaintiff testified he took on the day he received the vehicle from defendant (Pl. Exs. 83A-83D), one of which depicts the interior of the vehicle, in which a stick shift used for a manual transmission is clearly visible.  (Pl. Ex. 83D.)

Here, plaintiff appears to allege that, in advertising the vehicle as having an automatic transmission, a power seat, heated seats, a rear spoiler, and front floor mats when the vehicle did not have these features, defendant represented that the vehicle had accessories, characteristics, and qualities which it did not have, a practice prohibited by the Maryland CPA.  Md. Code Ann., Com. Law § 13-301(2).  To establish a private cause of action under the Maryland CPA, however, a consumer must not only show that a merchant's actions constituted a prohibited practice, but the consumer must also establish actual injury or loss sustained as a result of a prohibited practice.  Md. Code Ann., Com. Law § 13-408(a).  Maryland courts have emphasized that "a failure to establish the nature of the actual injury or loss that a consumer has allegedly sustained as a result of the prohibited practice is fatal to a private cause of action under the Act."  McGraw, 723 A.2d at 512.  At trial, plaintiff testified that he had to pay for repairs to the vehicle necessary for it to pass state inspection and presented a repair invoice to support this claim.  (Pl Exs. 61-63.)  Plaintiff did not testify that he paid for, or had any damages associated with, an automatic transmission, power seats, heated seats, a rear spoiler, or front floor mats to be installed in the vehicle.  Moreover, plaintiff testified that defendant later mailed him a spoiler for the vehicle.  Thus, even if the court were to literally construe the allegations in plaintiff's Complaint, plaintiff has not established that he sustained actual injury or loss as a result of those misrepresentations, as required by Section 13-301(2).  Md. Code Ann., Com. Law §§ 13-301(2), 13-408(a).

In Count Five of the Complaint, plaintiff also alleges that due to "after-market parts on the vehicle it is no longer under the manufacturer's warranty."  (Id. ¶ 35.)  Again, plaintiff does not direct the court to a particular provision of the Maryland CPA, but it appears that the only provision upon which plaintiff could be relying is Subsection (2) of Section 301 of the Act, which states that an unfair or deceptive trade practice includes: "any representation that . . . consumer goods . . . have a sponsorship, approval, accessory, characteristic, ingredient, use,

benefit . . . which they do not have" or that "consumer goods . . . are of a particular standard, quality, grade, style or model which they are not." Md. Ann. Code, Com. Law § 13-301(2).  At trial, plaintiff testified that Younger, the authorized Mitsubishi dealer, informed him on September 22, 2009 that the vehicle was not under factory warranty because it had after-market parts.  Plaintiff submitted a copy of defendant's web ad, but that advertisement does not represent that the vehicle is under factory warranty. (Pl. Ex. 77.)  Although plaintiff testified that an employee of defendant, Ms. Kohanano, expressly represented to plaintiff that the vehicle was under factory warranty and plaintiff presented a facsimile from Ms. Kohanano containing a CARFAX report stating that the vehicle's warranty was "active" (Pl. Ex. 35), these representations occurred <u>after</u> the sale of the vehicle and do not support a claim under the Maryland CPA.  Md. Ann. Code, Com. Law § 13-303 ("applicable transactions" include "sale . . . of consumer goods" and the "offer for sale" of such goods).  Plaintiff has presented no direct evidence that defendant represented that the vehicle was under factory warranty either in its offer of the vehicle or at the time it sold the vehicle to plaintiff.  Accordingly, plaintiff's claim fails because plaintiff has not established by a preponderance of the evidence that defendant unfairly or deceptively represented that the vehicle was under factory warranty in its offer or sale of the vehicle.

Finally, Plaintiff alleges in his Complaint that "[defendant's] warranty states 'Outside invoice will be honored by the dealer,' however, [defendant] is unwilling to honor an outside invoice."  (<u>Id.</u> ¶ 37.)  At trial, plaintiff and his mother testified that the document affixed to the window of the vehicle stated: "All repairs must be done in dealer's shop.  Outside invoice will be honored by the dealer."  In support of his claims, plaintiff submitted the document affixed to the window of the vehicle, which is labeled "Buyer's Guide."  (Pl. Ex. 75.)  It appears that the word "No" was removed from that document by the tape that was used to affix it to the window of plaintiff's vehicle.  At trial, defendant submitted a copy of its standard warranty, labeled "Buyer's Guide," which states: "All repairs must be done in dealer's shop.  <u>No</u> outside invoice will be honored by the dealer."  (Def. Ex. 1.)  At the supplemental hearing, defendant's employee Mr. Kohanano testified that this text was included in every Buyer's Guide, and that the Buyer's Guide was affixed to every vehicle that defendant sold.  At the supplemental hearing, Ms. Kohanano testified that a copy of the Buyer's Guide, including this text, was affixed to plaintiff's vehicle.  At trial, on cross-examination, after defense counsel showed plaintiff a copy of defendant's standard warranty, plaintiff conceded that it was "probable" that the word "no" was on the document on his vehicle.  In addition, on cross-examination, plaintiff agreed that, with the exception of the tape on the document he submitted, the copy of defendant's Buyer's Guide and the document affixed to plaintiff's windshield were "one and the same document."  Accordingly, plaintiff's claim fails because I cannot find by a preponderance of the evidence that defendant made a representation that it would honor an outside invoice, and then reneged on that representation.

**III.**    **CONCLUSION**

In conclusion, the court must note that its decision in this case is limited by the specific causes of action asserted in plaintiff's Complaint. For the reasons stated above, the undersigned concludes that plaintiff has not established defendant's liability for any of the five counts asserted in the Complaint. Accordingly, plaintiff's request for relief is denied.

It is HEREBY ORDERED this _____17_____ day of October, 2012, that:

1.  Judgment be entered in favor of defendant;

2.  The Clerk of the court shall close this case.


Date: _____October 17, 2012_____             _____/s/_____

                                                Beth P. Gesner
                                              United States Magistrate Judge